IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LESLIE THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 22-cv-3748 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| ST. JOSEPH MEDICAL CENTER | ) | |
| (AKA PRESENCE CARE | ) | |
| TRANSFORMATION CORP. AND | ) | |
| AMITA HEALTH), and | ) | |
| LYNN POLHEMUS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* plaintiff Leslie Thompson brings this lawsuit against her former employer, St. Joseph Medical Center d/b/a/ Presence Central and Suburban Hospitals Network ("St. Joseph") and her former supervisor, Lynn Polhemus, alleging that defendants unlawfully terminated her: (1) because of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.*; (2) because of her age, sex, and race, in violation of the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*; (3) because of her sex and race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*; and (4) because of her race, in violation of 42 U.S.C. §1981. On August 25, 2023, defendants moved for summary judgment, (Dckt. #31), and filed a Rule 56.1 Statement of Material Facts, (Dckt. #32 ("DSOF")), supporting Memorandum, (Dckt. #33), and Local Rule 56.2 notice, (Dckt. #34). Plaintiff did not respond to defendants' motion despite receiving an explicit warning (via the Local Rule 56.2 notice) of the possible consequences of failing to do so. As such, this motion is ripe for disposition and the Court grants summary judgment in favor of defendants for the following reasons.

1

**I.      LEGAL STANDARD FOR CONSIDERATION OF SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Issues of fact are material if they are outcome determinative. *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Evidence considered on a summary judgment motion "need not be admissible in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016); *see also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Furthermore, courts do not weigh the evidence or resolve conflicts in the record at summary judgment; instead, they review the evidence presented in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *NES Rental Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013). Summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

II.     FACTUAL RECORD

Pursuant to the local rules, the facts defendants asserted in their Rule 56.1 statement of undisputed material facts are admitted because plaintiff failed to file a response. N.D.Ill. L.R. 56.1(b)(3)(C); *Smith v. Lamz*, 321 F.3d 680, 682–83 (7th Cir. 2003); *Metropolitan Life Ins. Co. v. Gentry*, No. 19 C 3328, 2022 WL 2072999, at *1 (N.D.Ill. June 9, 2022) (where non-moving party fails to respond to Rule 56.1 Statement, the moving party's asserted facts in their statement are admitted). Those facts are as follows.

    A.      **Plaintiff's Employment With St. Joseph**

Defendant is a not-for-profit medical facility located in Joliet, Illinois. DSOF ¶2. Plaintiff is a fifty-eight-year-old African American woman who began working for St. Joseph in 1993, and transitioned into a new role as a telemetry technician in or about 2000. *Id*. ¶¶6-7, 11–12. That role required plaintiff to monitor heart rates and rhythms of at-risk patients who needed their cardiac status monitored around the clock. *Id*. ¶13. This role was pivotal for St. Joseph's care model because plaintiff was required to notify nurses who would physically check on the patient that plaintiff was monitoring if plaintiff observed any patient abnormalities in the patient's readings. *Id*. ¶¶13–14. To accomplish her duties, plaintiff sat with a partner in St. Joseph's telemetry room, each constantly observing the cardiac monitors of about sixty patients. *Id*. ¶15.

In early 2021, plaintiff worked night shifts from 7:00 p.m. to 7:30 a.m. with a telemetry technician partner, Alissa Mason ("Mason"), under the supervision of Lynn Polhemus ("Polhemus"), a sixty-one-year-old white woman. *Id*. ¶¶16–17, 53. On May 26, 2021 and shortly thereafter, Mason raised concerns about plaintiff's ability to stay awake during her telemetry shifts to Polhemus. *Id*. ¶¶18–19. On May 30, 2021, Mason emailed Polhemus a summary of dates and times when plaintiff and another telemetry technician, Kristine Franze

("Franze"), a fifty-seven-year-old white woman, were asleep on the job, including photos of them sleeping in the telemetry room.[1]  *Id*. ¶¶20–21, 52.

### B.  Following an Internal Investigation, Polhemus Concluded That Plaintiff Fell Asleep During Work Shifts On Multiple Occasions.

Polhemus decided to investigate Mason's reports of her coworkers.  *Id*. ¶28.  Polhemus interviewed both plaintiff and Franze; Franze admitted to sleeping at work, plaintiff did not.  *Id*. ¶¶28–30.  In their June 5, 2021 meeting, plaintiff told Polhemus that she "had closed her eyes because of strain," but did not fall asleep at work.  *Id*. ¶30.

As a result of her investigation, Polhemus ultimately concluded, "based on overwhelming evidence," that both plaintiff and Franze had fallen asleep during multiple work shifts.  *Id*. ¶¶31–33, 35.  Polhemus also determined that the pair had not met St. Joseph's legitimate expectations in those instances because sleeping while monitoring patients' cardiac status posed a safety risk to the hospital's patients.  *Id*. ¶34.  Polhemus also believed that plaintiff was not honest in her denials during her investigation.  *Id*. ¶35.

Polhemus scheduled meetings with both plaintiff and Franze to tell them of her decision to terminate their employment.  *Id*. ¶¶36–39.  Plaintiff was informed of her termination for sleeping on the job in person on June 14, 2021.  *Id*. ¶38.  Plaintiff was fifty-eight years old on her date of termination.  *Id*. ¶42.  That same day, Franze resigned her position via email before Polhemus could meet with her to inform her that her employment with St. Joseph had been terminated because she also slept during her telemetry technician shifts.  *Id*. ¶¶40–41.

Plaintiff maintains that defendants' decision to terminate her employment was discriminatory.  *Id*.  To begin, during her deposition in this matter, plaintiff denied sleeping

---

[1] During her deposition, plaintiff admitted that the photos at issue depicted her at work in the telemetry room with her eyes closed.  DSOF ¶¶23–26.

4

during her work shifts when confronted with multiple photographs depicting her at work with her eyes closed by claiming she was "resting her eyes." *Id*. ¶26. Plaintiff further testified to her belief that she was fired because "she was the most senior telemetry technician and 'at the top of pay,'" and because of a rumor she heard from other telemetry technicians that St. Joseph had "hired two younger white male employees to replace her." *Id*. ¶43. However, plaintiff admitted that those two rumored individuals never ended up in defendants' employ and that what she heard to the contrary was "hearsay." *Id*. ¶¶43-44. Indeed, defendants "did not hire, or even plan to hire, two white male telemetry technicians to replace [plaintiff] or Polhemus." *Id*. ¶45.

On or about November 1, 2021, plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission, which issued plaintiff right to sue letters on April 29, 2022 and May 25, 2022, respectively. *Id*. ¶¶46–47. On July 20, 2022, plaintiff filed her compliant. (Dckt. #1).

### III. DISCUSSION

Plaintiff alleges that defendants discriminated against her on the basis of her age in violation of the ADEA and IHRA, the basis of her sex in violation of the IHRA and Title VII, and the basis of her race in violation of the IHRA, Title VII, and 42 U.S.C. §1981 when they terminated her employment on June 14, 2021. (*Id*. ¶¶33–67).

> **A. Plaintiff Has Failed to Present Sufficient Evidence to Raise a Genuine Issue of Fact as to Whether Defendants Discriminated Against Her on the Basis of Her Race, Sex, or Age.**

To prevail on her claims of race, sex, and age discrimination, plaintiff may proceed under the direct and indirect methods of proof to establish her discrimination claims. *See, e.g.*, *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). The ultimate question is whether the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse

5

employment action." *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018), *quoting Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Under the direct method, the focus is on "whether the evidence 'points directly' to a discriminatory reason for the employer's action." *Atanus*, 520 F.3d at 671. Proof under the direct method "'is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion . . . but also includes circumstantial evidence which suggests discrimination through a longer chain of inferences.'" *Id.* at 671, *quoting Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1053 (7th Cir. 2006). "[C]ircumstantial evidence demonstrating intentional discrimination includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; [and] (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment. . . ." *Id.* at 672 (cleaned up).

Through her lack of response to defendants' motion and statement of facts, plaintiff – who alleges, without elaboration, that she was treated less favorably due to her race, sex, and age, (Dckt. #1 at 2–3) – presents no direct or circumstantial evidence that links her race, sex, or age to her June 2021 discharge, so these claims fail under the direct method of proof. *Atanus*, 520 F.3d at 671.

The Court is therefore left to consider whether the record creates a presumption of discrimination through an indirect method of proof. Typically, a plaintiff may make a prima facie case through this method by showing the following:

> (1) she belongs to a protected class; (2) she performed her job according to [defendants'] legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably by [defendant].

*Id*. at 672–73.  The Court applies this standard to plaintiff's age, sex, and race discrimination claims.  *Fields v. Bd. of Educ. of City of Chicago*, 928 F.3d 622, 625 (7th Cir. 2019) ("We apply the same standard to discrimination claims under §1981, Title VII, and the [ADEA]."); *Zaderaka v. Illinois Hum. Rts. Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989) (adopting the same standard for employment discrimination actions brought under the IHRA).  The burden then shifts to defendants to produce a legitimate, non-discriminatory reason for plaintiff's termination.  *Id*.  If defendants articulate a legitimate, non-discriminatory reason for their action, the burden shifts back to plaintiff to show that defendants' reason is a pretext for discrimination.  *Id*.

Defendants argue that plaintiff fails to establish a discrimination claim under the indirect method of proof because: (1) plaintiff failed to show that she met St. Joseph's legitimate expectations of her performance at the time of her termination; (2) plaintiff failed to identify any similarly situated employees of her race, age, or sex who were treated more favorably than her; and (3) plaintiff failed to present any evidence that defendants' legitimate, non-discriminatory rationale behind her termination was a pretext for discrimination.  (Dckt. #33 at 5–12).  Plaintiff's failure to produce sufficient evidence to create a disputed issue of material fact as to any one of the above elements will doom her case.  *See, e.g.*, *Riley v. Elkhart Community Schools*, 829 F.3d 886, 892 (7th Cir. 2016); *Atanus*, 520 F.3d at 672–73.

### 1. Plaintiff has failed to offer sufficient evidence that she met defendants' legitimate expectations at the time of her termination.

Whether plaintiff met defendants' legitimate expectations focuses on whether she met defendants' expectations "*at the time she was fired*."  *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014) (emphasis in original); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir. 2007).

Here, defendants assert that plaintiff failed to meet their legitimate business expectations when she fell asleep during her telemetry technician shifts preceding her termination in June 2021. (Dckt. #33 at 8–9). The Court agrees.

Sleeping on the job, particularly when doing so puts an employer's clients at physical risk of harm, does not meet an employer's legitimate expectations and dooms plaintiff's discrimination claims. *See, e.g.*, *Perry v. Pierce Chem. Co.*, No. 00 C 50186, 2002 WL 992658, at *1 (N.D.Ill. May 14, 2002) (citing *Coates v. Johnson & Johnson*, 756 F.2d 524, 553–55 (7th Cir. 1985) (affirming district court finding that sleeping on the job was a legitimate ground for discharging an employee)); *see also Roeben v. Home Depot, Inc.*, No. 13-cv-641-wmc, 2014 WL 7399107, at *6 (W.D.Wisc. Dec. 29, 2014), *aff'd sub nom. Roeben v. Home Depot U.S.A., Inc.*, 605 Fed.Appx. 577 (7th Cir. 2015) (same, citing cases); *Mehrberg v. Ill. Dep't of Com. & Econ. Opportunity*, Case No. 18-cv-02032, 2022 WL 19321, at *6 (N.D.Ill. Jan. 3, 2022).

The undisputed evidence establishes that plaintiff was confronted with evidence (including photos) of her sleeping at her post on multiple occasions and that plaintiff failed to respond with any plausible explanation to the contrary. In any event, even if plaintiff was not *actually* asleep on each of these separate occasions, defendants have put forth undisputed evidence that Polhemus *believed* that plaintiff slept during her shifts and was not truthful when Polhemus her confronted with evidence showing that she appeared to be sleep. *Grubb v. Cook Med. Techs. LLC*, No. 117CV01086JMSMJD, 2018 WL 2416407, at *6 (S.D.Ind. May 29, 2018) ("Cook has presented undisputed evidence that it believed Ms. Grubb to be sleeping, and therefore not meeting Cook's legitimate employment expectations."). In sum: plaintiff has failed create a genuine issue of fact by not responding to the evidence offered in support of defendants'

motion. *See Mehrberg*, 2022 WL 19321, at *6 (plaintiff's failure to respond to argument that she was not meeting work expectations fails to create a genuine issue of fact).

For these reasons, the undisputed evidence shows that plaintiff was terminated because she failed to meet defendants' legitimate expectations, and no reasonable juror could conclude otherwise. *Ortiz*, 834 F.3d at 765.

### 2. Plaintiff has failed to offer sufficient evidence that a similarly situated employee was treated more favorably than her.

To establish that other employees were similarly situated to her, plaintiff "must show that members of the comparative group are directly comparable to her in all material respects." *Atanus*, 520 F.3d at 673 (cleaned up); *Abrego*, 907 F.3d at 1013 (to show that a coworker is similarly situated to a plaintiff who has been disciplined, plaintiff must proffer evidence that the other employee had a "comparable set of failings") (citing *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)).

Plaintiff makes no attempt to show any comparator exists in this case.[2] Instead, it is *defendants* who put forth a comparator telemetry technician: namely, Kristine Franze, a fifty-seven-year-old white woman who was only one year younger than plaintiff. Like plaintiff, Franze fell asleep while working on multiple occasions; she had been investigated and confronted with that fact by Polhemus; and she would have been fired by Polhemus on the same date as plaintiff as fired by Polhemus but for the fact that she submitted her resignation earlier that day. DSOF ¶¶21, 28–29, 33–34, 39–41, 52. As a result, no reasonable juror could conclude that such comparator exists, another avenue by which plaintiff's discrimination claims fail. *See Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 723–24 (7th Cir. 2018) ("Ultimately, plaintiff bears the

---

[2] It is undisputed that defendants suspected no other telemetry technician (other than Franze) of sleeping on the job at the time of plaintiff's discharge. DSOF ¶¶50–51.

9

burden of showing the individuals [she] identifies are similarly situated. . . . Because plaintiff fails to do so, [her] comparator argument must fail.").

### 3. Plaintiff has failed to offer evidence showing that defendants' legitimate, non-discriminatory reason for terminating her employment was pretextual.

As shown above, defendants have offered a legitimate, non-discriminatory reason for terminating plaintiff's employment. As a result, it was plaintiff's burden to present sufficient evidence to allow a reasonable jury to find that defendants' stated rationale for her termination was false and that defendants' actions were "based on prohibited discriminatory animus." *Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 663 (7th Cir. 2011). Pretext can be shown by evidence showing "that [defendants'] reason had no basis in fact, that the explanation was not the real reason for its action or that the reason stated was insufficient to warrant the adverse job action." *Atanus*, 520 F.3d at 674 (cleaned up). Furthermore, plaintiff "must do more than simply allege that an employer's stated reasons are inaccurate; [she] must still have some circumstances to support an inference that there was an improper motivation proscribed by law." *Benuzzi*, 647 F.3d at 663 (cleaned up).

Here, plaintiff has failed to present sufficient evidence to raise a genuine issue of material fact as to whether defendants' reason for her termination was pretextual. *See, e.g.*, *Atanus*, 520 F.3d at 674; *Benuzzi*, 647 F.3d at 663. Even if plaintiff was not actually asleep when defendants accused her of being asleep, the critical question is whether defendants actually believed she was sleeping and that was their real reason for terminating plaintiff's employment. *Atanus*, 520 F.3d at 674. Indeed, she conceded this point by admitting in her deposition that someone who viewed the photographs of her would think that she was asleep, DSOF ¶25, and by declining to respond to defendants' motion for summary judgment. *See, e.g.*, *Peretz v. Sims*, 662 F.3d 478, 480–81 (7th Cir. 2011) ("By failing to respond to the motion for summary judgment, Peretz concedes a

number of damaging facts that, taken together, demonstrate that none of the named state employees were responsible for his purported constitutional deprivation."). The Court is therefore left with defendants' uncontroverted, non-discriminatory rationale for terminating plaintiff's employment and defendants are entitled to summary judgment for this reason as well. *Riley*, 829 F.3d at 892.

## CONCLUSION

For all of the above reasons, defendants' motion for summary judgment, (Dckt. #31), is granted as to each of plaintiff's claims.

**Date: July 16, 2004**

_____
**Jeffrey I. Cummings**
**United States District Court Judge**